Good morning. May it please the court. My name is Zachary Best. I represent the plaintiff appellant Jose Trujillo. This matter is an ADA matter that stems from a visit Mr. Trujillo had to the appellee's restaurant where, because of his disability, he encountered a different situation than able-bodied patrons encountered at the same facility. We're here as the result of an order on a fees motion at the end of the matter. Despite Mr. Trujillo having extraordinary success in making the restaurant accessible, the district's court order instead focused on the proportionality of the damages award to the fees requested. And we urge the court to find error there. After all, he did have great success in his case. He started off with seven barriers that he encountered and then wound up eventually removing 27 other barriers that were discovered by his appellant. So where did the district court go wrong in its fee award? Well, it's the proportionality analysis. In the civil rights ---- You mean the extent of success? Well, it's the district court tied the amount of attorney's fees that were requested to the actual damages that the plaintiff received, in this case $4,000. And the problem with this, the statutory scheme of the ADA, is that there are no monetary damages awarded to a plaintiff, just injunctive relief. And realizing that attorneys wouldn't take these sort of cases where there's no monetary recovery to take a percentage of, what the statutory scheme allows for is the recovery of attorney's fees. In this case, the court wound up discounting about half the fees. And during its analysis mentioned that it had a lot to do, or we believe, that the court's decision probably started with a decision that there ---- that because the damages were so low, so should the fees. And in doing so, the court looked at the sparseness of the docket, is what the court pointed to. But here in the Northern District, under General Order 56, the cases actually stayed, ADA cases, that is, are stayed until a joint site inspection occurs. And then at the result of the joint site inspection, the mediation is set and a case management conference is set, and then a schedule is finally set. The impetus behind General Order 56 is for the plaintiffs to focus, or the parties, rather, to focus all of their efforts on trying to settle this case early. And ---- And this case settled early. It did. But the problem with the Court's order is they didn't see all of the invisible work, if you will, that went on in order to achieve the result that the plaintiff received. And we ---- one of the other problems is that kind of leads to one of the other problems is that in our fees motion, we took great pains to point out all of those ---- that invisible work. And the Court did make some specific reductions in the award, but then made a blanket discount based on a few pointed examples the Court made. And then disallowed any fees whatsoever for the mediation statement, which we were required to prepare. And ---- Late. You filed it late. Well, I'm not even sure it was actually ever a filed ---- Or prepared and turned over late. Yes, but we had ---- and again, this wasn't an issue until we received the answering brief. The mediators allowed to vary the requirements of the ADR rules. And in this case, we were going to prepare or file that brief as close to the mediation as possible to hopefully ---- But not after. I mean, it's difficult to fault the district court judge for taking off the hours spent on preparing a late filing. We would disagree that it was late. And if the Court would like us to, we can supplement the record. Well, we don't need to supplement the record. What date was the report due? Oh, it was a week before the mediation, is what the ADR rules say. I believe the mediation was the 20th. Right. Had the mediation report been filed by then? It had not. So isn't that late? Not if the mediator said, I don't need to see your mediator. But did the mediator say that? That's what I believe happened, Your Honor. I honestly wasn't at ---- I wasn't involved in that exchange, but that's my understanding. Is there anything in the record ---- excuse me ---- reflecting that the mediator said it didn't need to ---- that he or she didn't need to see the report? No, and again, that was because that issue didn't come up until the answering brief. So by the time we'd filed the record, we didn't have that. I'm not ---- this is not resonating with me because if the mediator said that he or she didn't need to see the report, then why was the report being prepared? No, it was to encourage the parties rather than spending a bunch of time on the brief to try to settle. But as we got the case settled literally the day before mediation, that's when we finally had to get the mediation brief together. Now, the mediation brief is just one of the three items that we really take issue with here. There was also the issue of the court cut a lot of time off of the preparation of the fees motion itself. Well, that brings me to this point. As I do my calculation, the preparation of the fees application was about 40 percent of the claim fees. You saw it between lawyers and paralegal, senior lawyer and lesser lawyer, 32.4 hours. That's pretty much a work week for some lawyers at least to do that one task. It seems to me that the judge was within his discretion to be able to reduce that, as he did with a few other examples. Do you find that he reduced the inspection activity by one hour? Did he abuse his discretion in that regard? I'm sorry, Your Honor. Which activity? The activity with regard to the inspection of the site. Oh, no. We didn't take issue with that, Your Honor. And median confer, he reduced it by a half hour, right? Yes. We didn't have a problem. And then there was those ever-present point or six minutes for everything, every activity, looking at a notice or whatever it might be from the court. He had concerns about that and reduced those as well, right? Right. In any of those instances, did he abuse his discretion? I'm sorry, Your Honor? In any of those instances, did he abuse his discretion? No, Your Honor. No, Your Honor. It was, like we point out, the global reduction that faulted the plaintiffs for using too many timekeepers, when, as you see, the timekeepers that were utilized were the lowest-ranking timekeepers for the most part. So ---- I don't think that's what he was saying. He wasn't saying you shouldn't use those. I think it's just the opposite. He would say you need to use the lowest filler. But it was the number that seemed like a lot of people were picking up and putting down the file and billing for it. Well, yes. I think that was the import of his concern. Right. I forgot to mention at the beginning, Your Honor, forgive me, that I wanted to keep the last two minutes for a possible rebuttal, and I see now I've hit that. But if your court would like me to continue on answering that, I can go ahead. Otherwise, I'll ---- You should answer Judge Huck's question. Yeah. I think the Court wasn't ---- the Court seemed to be concerned, okay, what is the problem with using multiple timekeepers? It would bring duplicative efforts. And what the Court found is they did find a few duplicative efforts which we're not quarreling with. But the fact that there were so many people working on the case, the Court suggested, why not have just one attorney do the fees motion and maybe not even have anyone else help? If it had been myself, the highest timekeeper, it probably would have wound up being more expensive than what we finally came up with. Okay. You've got a minute left for a rebuttal. Yeah. That's fine. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Donia Marie Baker on behalf of defendants with my law firm, Alvarenga Law. As we've heard here this morning and as I'm sure you've read in the briefs, a lot of what is being brought up hinges around this idea of proportionality. However, I think that's a little bit misplaced because if you listen to everything that was said today and the questions that you've directed at opposing counsel as well, the true focus of this case has to be on Lodestar and a district court's fundamental ability to determine what reasonable fees are. Well, let me ask you. The one thing that troubled me a little bit about this case was the district court did note that the recovery amount was, what, $8,000 for which it included fees and whatnot. Yes. I can't remember exactly. $4,000 and $4,000. Yes. But what the district court didn't take account of was the remedial relief that was obtained. And under our case law, that is that needs to be accounted for. Well, Your Honor, I think it did take account of that. How? In the fact that, well, it determined that this ---- He seems to be focused primarily on the amount of recovery. It seemed to be 28 lines about the amount of recovery, Your Honor. And the court ---- Where did he discuss the other relief that was obtained? He mentioned it in the introduction as well as the fact that they're a prevailing party. He said there's no doubt they are a prevailing party. And usually when you look at can there be a reduction because of the fact that this is only based on non-monetary, it's looking at whether it's a prevailing party or not. And the cases that I've looked at mostly look at the fact that, okay, a court said you can't have anything because it's you didn't recover any monetary recovery. So in this case, the court focused, it's a factual determination. If you look at what is prescribed for courts to do when it comes to attorney's fees, once an attorney's fees motion is filed, this court step by step went through it. First, it determined that there was a prevailing party. Second, it gave them their reasonable hourly rates. And then we get to the third step, which is looking at reasonable time spent on the case, which is a factual determination. And that's where we get stuck. But the cases also say, and particularly Hensley, it says that a court has to look at what the parties do, and it has to assure that billing judgment is used. And that's where this court was focused. And I would say that a district court ---- Breyer, in your view, the district court, even though he didn't ---- he seemed to put more emphasis on the amount of the monetary relief, but your view is that he did consider the equitable relief that was obtained? That's correct, Your Honor. And that even considering the equitable relief, the corrections that needed to be made, the amount of time expended was too much? That's correct, Your Honor. And I believe that courts are empowered, if not charged, with a duty to make sure that litigants use billing judgment, and they are empowered with the right to reduce things that are excessive, redundant, and improper. And I believe this Court did just that. And it wrote a 14-page order detailing with charts, and line by line, exactly what it felt. And apparently that's not enough for plaintiff. Plaintiff wants this case to be a little different and wants to eradicate the ability to make a factual determination of what reasonable fees are. And I will tell you, I'm a female Latina, and as a female Latina, I consider the importance of civil rights, and I understand that you're charged with the duty of protecting that. But by the same token, we cannot be guilty of the same evil we're trying to protect. We can't do an unequal application of the law. And so, Your Honor, I ask that this case be held to the same standard as other cases, and I ask that Lodestar be applied. Former First Lady Roosevelt, Eleanor Roosevelt, said, Justice cannot be for one side alone, but must be for both. And when you have an unequal application of the law, you have injustice. And in the words of Martin Luther King, Where's the unequal justice? I mean, I don't understand. Sure. All this case is about is they object to the way in which the district court calculated the award of attorney's fees. Correct. And that's all this case is about. Yes, Your Honor. And a legitimate legal issue is whether or not they raise a legitimate question, which I think is of concern, because our case law does say you not only take a look at the monetary recovery, you also need to take into account the other relief that's obtained. One could look at the district court judge's order and say his focus was on the monetary relief. If you look at the amount of relief dollars that they recovered, and you look at the amount of fees that they were demanding, requesting, the difference is pretty substantial, and it's just not right. And, Your Honor, I would argue that And in there, and what's missing in there is an assessment of the other relief that was obtained. Now, all that said, we do take a look carefully at what the district court offered as an explanation in the broader context, and it may be here that the district court adequately explained overall why he thought a reduction was appropriate. So that's all that needs to be said. Thank you, Your Honor. I have nothing else to say. Thank you. Mr. Bess, assuming for a moment that the judge should have focused more on the injunctive relief received, but given the fact that he went through a detailed analysis of the reasonableness of each entry, why wouldn't that be harmless error? Well, it would be, so fees motions are reviewed under an abusive discretion standard, but if there is, but the court does do an over-review of the law, and we think the analysis that tied the fees award to the actual dollar amount without any tether to the injunctive relief, the substantial injunctive relief, that that tainted the entire decision. It is unclear how much that factored into the analysis, but we believe it factored greatly into the analysis since there was zero discussion in the record, the court's order regarding the injunctive relief. So it's your sincere belief that if this went back to the judge and he said, I acknowledge the fact that there were 33 improvements to the property, that it would be a change given his detailed analysis? That's what we hope, Your Honor. We believe so. Okay. Thank you, counsel. Thank you. Matter submitted.
judges: Paez, Rawlinson, Huck